**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOHN L. TOWLER and LISA SELLARS | § § § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-2990 |
| | § | |
| U.S. BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM & ORDER

Pending before the Court is Defendant U.S. Bank's Motion to Dismiss. (Doc. No. 12.) Plaintiffs John L. Towler and Lisa Sellars executed a home-equity note in 2003 that eventually came to be held by U.S. Bank. (Doc. No. 11 at 3.) They contend that the loan and associated lien violate the Texas Constitution because they are secured by property that is primarily for agricultural use. (*Id.* at 4.) Consequently, Plaintiffs have brought claims for breach of contract, declaratory judgment, and to quiet title. They seek a range of remedies, including forfeiture of the loan's principal and interest and injunctive relief. (*Id.* at 10–11.) U.S. Bank now asks for all claims to be dismissed with prejudice on the grounds that they are time-barred and, in any event, legally deficient. (Doc. No. 12.) Having considered the filings and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

## I.      BACKGROUND

In their First Amended Complaint, Plaintiffs explain that they executed a home-equity note in July 2003. (Doc. No. 11.) The note, attached as an exhibit, shows the execution date as July 16, 2003, the loan amount as $248,000, and the property securing the note as 36211 Repka

Road in Waller, Texas. (Doc. No. 11-1 at 2.) The note states it is the borrowers' and lender's "express intention … to structure this Extension of Credit to conform to the provisions of the Texas Constitution applicable to extensions of credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution." (*Id.* at 3.) A security instrument accompanied the note, containing numerous other contractual provisions, which Plaintiffs also attached to their amended complaint. (Doc. No. 11-2.) When the loan was made, Plaintiffs executed a home-equity affidavit and a homestead affidavit, making various representations about the property that secured the loan. (Doc. No. 1-6 at 21, 33.) These affidavits figure prominently in U.S. Bank's arguments in its pending motion.

Plaintiffs assert that the Repka Road property was designated as agricultural land when the loan was issued. (Doc. No. 11 at 3.) To show this, they attach a "Notice of Appraised Value" from the Waller County Appraisal District, dated May 20, 2003. (Doc. No. 11-3.) The county appraised the total market value of the 72.519-acre property at $364,880, of which $145,950 was the property's "Agricultural or Timber Market Value," $6,260 was the "Agricultural or Timber Productivity Value," and the remainder was mostly the value of improvements. (*Id.*) The land also qualified as Plaintiffs' homestead, and the county's appraisal registered a substantial reduction in the taxable value owing to the homestead exemption. (*Id.*)

In Plaintiffs' view, securing the loan against agricultural land rendered the loan constitutionally deficient, and they sent U.S. Bank a notice to cure the deficiency on February 17, 2017. (Doc. No. 11-4.) Their notice gave U.S. Bank sixty days to cure. (*Id.*) U.S. Bank has apparently not yet cured the alleged deficiency. (Doc. No. 11 at 4.) Plaintiffs add that the Waller County Appraisal District continues to classify the bulk of the property as land for agricultural use. (*Id.*) They attach an exhibit showing the county's most recent appraisal, which indicates that

the agricultural value of the land accounts for some three-quarters of its total value and that 69.5 of the 72.519 acres are "native pasture." (Doc. No. 11-7 at 2–4.)

On August 25, 2017, Plaintiffs filed this lawsuit in state district court in Waller County. (Doc. No. 1 at 1.) They amended their original petition soon afterwards. (Doc. No. 1-4.) The amended petition was accompanied by the home-equity affidavit and homestead affidavit that Plaintiffs had executed at the origination of the loan. (Doc. No. 1-6 at 21, 33.) U.S. Bank removed the suit to this Court on the basis of diversity jurisdiction soon after that. (Doc. No. 1.) Plaintiffs then filed their First Amended Complaint in December 2017, triggering the pending Motion to Dismiss.

## II.    APPLICABLE LAW

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In turn, the Federal Rules permit a district court to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). The complaint must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. When ruling on a motion to dismiss, the court "construes facts in the light most favorable to the nonmoving party, as a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quotation omitted).

## III. ANALYSIS

"In the State of Texas, the homestead has always been protected from forced sale, not merely by statute as in most states, but by the Constitution." *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2013). "Article XVI, section 50 of the Texas Constitution has long protected the homestead [by] strictly limiting the types of loans that may be secured by a homestead lien." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545 (Tex. 2016). These protections are present in earlier versions of Texas's constitution and even in statutes from its time as an independent republic. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016). The protections proceed from "age-old concerns that lenders would be unfair and borrowers unwise, eroding the protection the homestead is intended to afford." *Fin. Comm'n of Tex.*, 418 S.W.3d at 571. "So long leery of any impairment to the homestead, Texas was the fiftieth state in the Union to permit home equity lending." *Id.*

Texas finally took that step in 1997, amending its constitution to permit homestead liens to secure home-equity loans, "but, consistent with Texas's long tradition of protecting the homestead, the amendments clearly prescribed very specific and extensive limitations on those encumbrances." *Wood*, 505 S.W.3d at 545. Section 50(a)(6) contains the "litany of exacting terms and conditions" that a home-equity loan must meet for foreclosure of the property that secures the loan to be lawful. *Garofolo*, 497 S.W.3d at 477. One is the requirement that a lender failing to comply with its obligations under the loan must forfeit all principal and interest if, after receiving notice of the failure, it does not correct the problem within sixty days. Art. XVI § 50(a)(6)(Q). The provision specifies six ways of curing the deficiency. *Id.* § 50(a)(6)(Q)(x)(a)–(f). Section 50(c) then makes the litany of terms and conditions in Section 50(a) applicable to

liens: "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by [section 50]."

The constitutional provision at issue here concerns homestead property designated for agricultural use. When Plaintiffs executed this home-equity note, the Texas Constitution prohibited foreclosure based on home-equity loans "secured by homestead property designated for agricultural use as provided by statutes governing property tax, unless such homestead property is used primarily for the production of milk." Art. XVI § 50(a)(6)(I) (2001).[1]

In their complaint, Plaintiffs contend that U.S. Bank breached their contract when sixty days elapsed from Plaintiffs' notice of deficiency without U.S. Bank acting to cure it. (Doc. No. 11 at 5–6.) They cite Paragraph 19 in the security instrument, which says:

> As a precondition to taking any action premised on failure of Lender to comply, Borrower will advise Lender of the noncompliance by a notice… and will give Lender a reasonable time to comply.
>
> […]
>
> Only after Lender has received said notice, has had a reasonable time to comply, and Lender has failed to comply shall all principal and interest be forfeited by Lender as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under this Extension of Credit.

(Doc. No. 11-2 at 12.) Noting the sixty-day timetable in Section 50 and the security instrument's frequent reference to that provision, Plaintiffs submit that the "reasonable time" in the contractual text should be sixty days. (Doc. No. 11 at 5–6 n.1.) They say they have given U.S. Bank the required sixty days to use one of the methods of cure provided in Section 50(a)(6)(Q)(x), but it has not done so. Accordingly, Plaintiffs assert that U.S. Bank must forfeit all principal and interest on the loan. (*Id.* at 6–7.)

---

[1] This provision was repealed in 2017, effective January 1, 2018. S.J.R. 60, 85th Texas Leg., § 1 (2017); Proposition 2 (2017). Its applicability to the present dispute is, however, not in question.

Plaintiffs' quiet title and declaratory judgment claims are based on Section 50(c). As noted, that subsection provides that no "lien on the homestead shall ever be valid unless it secures a debt" that complies with the strictures of Section 50(a). They say that U.S. Bank's lien, though facially valid, has been "void *ab initio*" because it is and always has been secured by land used for agriculture. (Doc. No. 11 at 7–8.) Consequently, they seek to have title quieted in their favor by having the "cloud" of U.S. Bank's invalid lien cleared away. (*Id.*) They also seek a declaratory judgment to the same effect. (*Id.* at 9.)

A threshold matter is the timeliness of Plaintiffs' claims. (Doc. No. 12 at 16–17.) U.S. Bank argues that the statute of limitations for Plaintiffs' breach of contract claim is four years. (*Id.*) In its view, the alleged breach occurred at origination, because the alleged violation could have been identified then. (*Id.*) This is the correct view. The Fifth Circuit recently held that the breach occurs "at the point the lender fails to comply with the term, not later when the lender fails to cure." *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 603 (5th Cir. 2017). The court acknowledged that accrual of the cause of action can be deferred "until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action." *Id.* at 603. *Alexander* was not such a case, nor is this. Plaintiffs themselves assert that the property in question was used for agriculture at least since 2003, when the loan was executed, but they did not bring suit until 2017. Therefore, it is appropriate to dismiss Plaintiffs' claim for breach of contract.

By contrast, suits to quiet title are not subject to a limitations period. "[N]o statute of limitations applies to cut off a homeowner's right to quiet title to real property encumbered by an invalid lien under section 50(c)." *Wood*, 505 S.W.3d at 550. "Section 50(c) starts with the premise that a lien securing a noncompliant loan is never valid. Implementing a section

50(a)(6)(Q)(x) cure provision brings the loan into constitutional compliance, thereby validating the accompanying lien." *Id.* at 549. "[W]hile a lender has 60 days to cure after notice, the borrower has no corresponding deadline by which it must request cure." *Id.* Accordingly, Plaintiffs' suit to quiet title is not time-barred.

U.S. Bank contends that Plaintiffs' suit to quiet title should nevertheless be dismissed because it is foreclosed by the home equity affidavit and homestead affidavit that they executed when the loan was originally issued.[2] (Doc. No. 11 at 5–7.) Amid a list of attestations that track the terms and conditions in Section 50(a)(6), the former affidavit said that "[t]he Property is not designated for agricultural use as provided by statutes governing property tax, unless such Property is used primarily for the production of milk." (Doc. No. 1-6 at 22.) The latter affidavit contained the same statement. (*Id.* at 34.) U.S. Bank cites numerous cases that purportedly stand for the proposition that "the statements in the affidavit are controlling" and require dismissal. (Doc. No. 17 at 2.)

The case law is not so clear-cut. Two of U.S. Bank's favored cases dealt with summary judgment, not motions to dismiss, and the plaintiffs had produced no evidence to rebut similar affidavits. *See Amaro v. Bear Stearns Resid. Mortg. Corp.*, 2016 WL 6775504 (S.D. Tex. Mar. 31, 2016); *Villagran v. JPMorgan Chase Bank N.A.*, 2015 WL 12550936 (S.D. Tex. Mar. 13,

---

[2] U.S. Bank devotes a portion of its motion to the argument that it is proper for this Court to consider these affidavits in ruling on the motion to dismiss. (Doc. No. 12 at 3 n.1.) The potential problem is that Plaintiffs did not attach the affidavits as exhibits to their First Amended Complaint. They did, however, attach them to the amended petition in state court, which U.S. Bank removed to this Court. (Doc. No. 1-6 at 21, 33.) "In ruling on Rule 12(b)(6) motions, district courts generally may rely only on the complaint and its proper attachments." *Fin. Acquis. Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006). But "[f]ederal courts are permitted to refer to matters of public record when deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). Documents previously filed by Plaintiffs in the same matter are comfortably within that exception to the general rule. In any event, Plaintiffs do not object to the consideration of the affidavits. (Doc. No. 13.)

2015). In the two other cases that U.S. Bank cites, courts granted motions to dismiss because similar affidavits trumped allegations in the complaint that were unsupported by exhibits. *See Reese v. Wells Fargo Bank, N.A.*, 2017 WL 5992406 (N.D. Tex. Dec. 4, 2017); *Summers v. PennyMac Corp.*, 2012 WL 5944943 (N.D. Tex. Nov. 28, 2012). Moreover, the approach taken in *Reese* and *Summers* is not the only one found in the case law. For instance, in *Box v. First State Bank*, a bankruptcy proceeding, a lender presented similar affidavits to rebut a challenge by the borrowers to the validity of their loan. 340 B.R. 782, 784–85 (S.D. Tex. 2006). Rather than accept the affidavits at face value, the bankruptcy court took testimony and found that the affidavits diverged from actual fact. *Id.* at 783. On appeal, the district court affirmed the result. *Id.* at 790.

Whatever the merits of *Reese* and *Summers*, the Notice of Appraised Value that the Waller County Appraisal District issued in 2003 and that Plaintiffs attached to their complaint distinguishes the present case from those. The Notice raises the allegations in Plaintiffs' complaint well above the level of plausibility required to withstand a motion to dismiss. This counsels the more careful approach to fact-gathering taken in *Box*.

Long-standing precedent of the Texas Supreme Court points in the same direction. In *Lincoln v. Bennett*, the court was considering whether a lender could foreclose against a homestead that had been used as security for a loan. 156 S.W.2d 504, 504 (Tex. 1941). At the time, the Texas Constitution prohibited mortgages, trust deeds, and all other liens on homesteads unless they were to secure the purchase money for the property or money for improvements to the property. *Id.* at 505. The lender argued that the borrowers were estopped from contesting the validity of the lien because they had represented that the property was not their homestead. *Id.* at 505. The court rejected that argument, looking instead to the actual fact of the borrowers' "open,

certain, and unambiguous" use of the property as their homestead at the relevant time. *Id.* at 506.

The court added:

> The constitution forbidding the fixing on the homestead of liens other than such as are thereby expressly permitted, no estoppel can arise in favor of a lender, who has attempted to secure a lien on homestead in actual use and possession of the family, based on declarations of the husband and wife made orally or in writing, contrary to the fact. To hold otherwise would practically abrogate the constitution. If property be homestead in fact and law, lenders must understand that liens can not be fixed upon it, and that declarations of husband and wife to the contrary, however made, must not be relied upon. They must further understand that no designation of homestead, contrary to the fact, will enable parties to evade the law, and incumber [sic] homesteads with liens forbidden by the constitution.

*Id.* (quoting *Texas Land & Loan Co. v. Blalock*, 13 S.W. 12, 13 (Tex. 1890)). The county's appraisal of Plaintiffs' property is a comparable indication of the land's actual use at the relevant time. Accordingly, the Court declines to find that the home-equity affidavit and homestead affidavit control, and so it rejects that ground for dismissing the lawsuit.

U.S. Bank also argues for dismissal on the ground that its contract with Plaintiffs contains savings clauses. The note states that, if any provision of the note "transcends the limit of validity prescribed by applicable law," it "shall be reduced to the limit of such validity or eliminated as a requirement, if necessary for compliance with such law, and such document shall be automatically reformed without the necessity of the execution of any new amendment or new document." (Doc. No. 11-1 at 3.) The security instrument contains a similar provision. (Doc. No. 11-2 at 12–13.) In support, U.S. Bank cites cases from the analogous context of usury, in which savings clauses were found to have kept lenders from violating Texas usury laws. *See First State Bank v. Dorst*, 843 S.W.2d 790 (Tex. App—Austin 1992); *Woodcrest Assoc., Ltd. v. Commonwealth Mortg. Corp.*, 775 S.W.2d 434 (Tex. App.—Dallas 1989).

The Court declines to dismiss the lawsuit on this basis as well. The savings clauses in Plaintiffs' note and security interest may well be valid, but the proper scope of the lien once the

savings clauses are applied is an open question. Moreover, Plaintiffs disagree that the savings clauses preserve the lien at all. (Doc. No. 13 at 6–8.) Plaintiffs' suit to quiet title is a proper means of resolving this uncertainty. Indeed, the cases cited by U.S. Bank counsel against dismissal at this early stage. The court in *Woodcrest Associates* explained that "[t]he effect of [savings] clauses in a particular case is largely a question of construing the terms of the savings clauses as a whole and in light of the circumstances surrounding the transaction." 775 S.W.2d at 438. The trial court in *Dorst* had construed the effect of the savings clauses only after a trial based on stipulated facts. 843 S.W.2d at 791. The careful course taken in those cases is appropriate here too.

U.S. Bank puts forward another ground for dismissing the quiet title claim—that Plaintiffs' claim must be based on the strength of their own title, not on the weakness of their adversary's. (Doc. No. 12 at 18.) U.S. Bank relies on *Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747 (N.D. Tex. 2012), which does state that principle. *Id.* at 767. That case, however, presented different facts. It concerned a foreclosure, and notice of default had been issued against the plaintiff. *Id.* at 758. In this case, no foreclosure seems to be in the offing; Plaintiffs are "the undisputed owner of the property by virtue of Plaintiffs' recorded deed." (Doc. No. 11 at 7; Doc. No. 20.) The strength of their title is adequately alleged for present purposes. Dismissal on this ground is likewise inappropriate.

Finally, there is the matter of Plaintiffs' request for declaratory judgment. U.S. Bank contends that it is time-barred. (Doc. No. 12 at 16.) Under Texas law, "declaratory judgment … is generally governed by the statute of limitations for the legal remedy underlying the claim; consequently, to determine what statute of limitations should apply to an action for a declaratory judgment, one must look to the legal remedy underlying the cause of action." *Nw. Austin Mun.*

*Utility Dist. No. 1 v. City of Austin*, 274 S.W.3d 820, 836 (Tex. App.—Austin 2008, pet. denied). U.S. Bank argues that declaratory judgment is time-barred because it infers the remedy that Plaintiffs seek through the declaratory judgment action is forfeiture of principal and interest. The provisions of Article XVI Section 50 in the Texas Constitution do not afford the forfeiture remedy on their own. *Wood*, 505 S.W.3d at 551. The forfeiture remedy's availability depends on the terms of the parties' contract, *Garofolo*, 497 S.W.3d at 479–80, and as noted, the limitations period for a breach of contract claim has ended.

The declaratory relief that Plaintiffs expressly request actually resembles their suit to quiet title. In their First Amended Complaint, they ask this Court to issue a judgment that "(1) declares Defendant has failed to cure Constitutional defects in the loan documents, (2) declares that the mortgage lien is noncompliant with the Texas Constitution and thereby void *ab initio*, and (3) declares that title be quieted in Plaintiffs' name." (Doc. No. 11 at 9.) If the legal remedy underlying the cause of action is the same as in a suit to quiet title, presumably the Texas Supreme Court's ruling that there is no statute of limitations for the latter applies equally to the former. *See Wood*, 505 S.W.3d at 549–50.

The resemblance of the two remedies raises a different issue. Some courts have held that dismissal of declaratory judgment is appropriate when it duplicates a quiet title claim. *See, e.g.*, *Metcalf v. Deutsche Bank Nat. Trust Co.*, 2012 WL 2399369, at *9 (N.D. Tex. June 26, 2012); *Sw. Guar. Trust Co. v. Hardy Road 13.4 Joint Venture*, 981 S.W.2d 951, 957 (Tex. App.— Houston [1st Dist.] 1998, pet. denied). "Both claims seek to clear the property's title, are based on the same facts, and request similar relief." *Sw. Guar. Trust Co.*, 981 S.W.2d at 957. U.S. Bank has not, however, urged dismissal on this ground. There is also case law suggesting that the relief available under the two causes of action is not coterminous. *U.S. Nat. Bank Ass'n v.*

*Johnson*, 2011 WL 6938507, at *2–4 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Accordingly, the Court leaves this question for a later time.


**IV.     CONCLUSION**

Defendant U.S. Bank has challenged the claims of Plaintiffs John Towler and Lisa Sellars and time-barred and legally deficient. The Court finds that the limitations period for Plaintiffs' breach of contract claim has passed, warranting dismissal. The Court also finds, however, that Plaintiffs' suit to quiet title is neither untimely nor deficient. The same is true, pending further litigation, of Plaintiffs' request for declaratory judgment. Consequently, the Court **GRANTS IN PART** and **DENIES IN PART** U.S. Bank's Motion to Dismiss.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on the 12th day of April, 2018.


_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE